UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-9107-DMG (MAAx)** | Date | August 14, 2020 |
| Title | *Melissa Jefferson v. Justin Raisen, et al.* | Page | 1 of 10 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: [IN CHAMBERS] ORDER RE PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS COUNTERCLAIM AND STRIKE AFFIRMATIVE DEFENSES [41]**

### I.
### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Melissa Jefferson, known professionally as Lizzo, filed the instant action for declaratory relief on October 23, 2019. Compl. [Doc. # 1]. She requests that the Court declare that Defendants Justin Raisen, Jeremiah Raisen, Yves Rothman, and Heavy Duty Music Publishing have no ownership rights in her song, "Truth Hurts." Compl. at Prayer for Relief. Lizzo recorded Truth Hurts in the summer of 2017 and released the song in September of that year. *Id.* at ¶ 14. In 2019, Truth Hurts reached number one on *Billboard*'s Hot 100 list, where it remained for six weeks, and has achieved hundreds of millions of plays across several music streaming services. Counterclaim at Introduction [Doc. # 27]. In 2020, Lizzo received three Grammy nominations and won one Grammy for the song. *Id.*

This dispute concerns the events leading up to Truth Hurts' creation, recording, and release.[1] Justin Raisen, a songwriter and music producer, "was approached" about working with Lizzo in 2016. *Id.* at ¶ 16. Justin and Lizzo agreed in January 2017 that Lizzo would come to Justin's home recording studio "for a writing and recording session with Justin and his brother and fellow producer and songwriter, Jeremiah." *Id.* at ¶ 17. Justin and Lizzo discussed their expectations for the session beforehand, and Rothman and the Raisens "created several instrumental tracks in preparation" for the session before Lizzo arrived. *Id.* at ¶¶ 20-21. During the session, Lizzo chose to "work off" a particular track that Rothman and the Raisens created, and Jeremiah suggested calling the song "Healthy" because the song's lyrics were to relate to "health, sobriety, and wellness." *Id.* at ¶ 22. Defendants claim that "Justin, Jeremiah, Yves, . . .

---

[1] As discussed below, the Court accepts as true Defendants' version of events for the purpose of resolving the motion to dismiss.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-9107-DMG (MAAx)** | Date | August 14, 2020 |
|---|---|---|---|

| Title | *Melissa Jefferson v. Justin Raisen, et al.* | Page | 2 of 10 |
|---|---|---|---|

and Lizzo . . . each contributed inseparable and interdependent non-trivial amounts of creative, original, and intellectual expression to create 'Healthy.'" *Id.* at ¶ 25.

While Lizzo, the Raisens, Rothman, and Jesse St. John Geller ("St. John") collectively wrote the song's lyrics, St. John found and "showed the group an internet meme that read, 'I did a DNA test and found out I'm 100% that bitch.'" *Id.* at ¶ 23. Jeremiah insisted that the group work the line into the song, and, indeed, Healthy's second verse includes the line "I just did a DNA test turns out I'm a hundred percent that bitch, even when I'm holistic / gotta keep it realistic / I could be, guest-listed / but I'd rather be home, get rest, not twisted." *Id.* at ¶ 24.

After the recording session ended, Justin put finishing touches on Healthy and another track, and circulated copies to the group, which gave unanimously positive feedback. *Id.* at ¶ 27. Lizzo and the Raisens held a follow-up recording session on April 17, 2017, at which the group edited and revised Healthy. *Id.* at ¶ 29.

Counterclaimants claim that, in June 2017, Lizzo and another producer, Ricky Reed, "copied substantial, significant original creative expression from 'Healthy' to create 'Truth Hurts.'" *Id.* at ¶ 32. In August 2017, Counterclaimants "reached out to Lizzo's team" to ask about whether Healthy would be included on Lizzo's upcoming EP, and learned that she had no plans to release the song. *Id.* at ¶ 33. Lizzo released Truth Hurts in September 2017, and credited herself, Reed, St. John, and Steven Cheung as songwriters and Cheung and St. John as producers. *Id.* at ¶ 34. She did not credit Counterclaimants as writers or producers for Truth Hurts.

Justin Raisen claims that, after Truth Hurts' release, he "received congratulations from people who had heard 'Healthy' and thought that 'Truth Hurts' was the final product from that song." *Id.* at ¶ 37. Raisen's co-manager tried to contact Lizzo's team about the purported similarities between the two songs, but was unsuccessful. *Id.* at ¶ 38. The Raisens then registered themselves as co-writers of Truth Hurts with the American Society of Composers, Authors, and Publishers. *Id.* at ¶ 39. Counterclaimants claim that they continued their efforts to discuss their ownership of Truth Hurts with Lizzo and her team for a year until Lizzo reached out to Justin Raisen in March 2019. *Id.* at ¶ 42. Raisen claims that "Lizzo admitted to [him] that elements of 'Truth Hurts' never would have been created without 'Healthy.'" *Id.* at ¶ 43. Lizzo and Justin Raisen have not spoken since. *Id.* at ¶ 45.

In August 2019, Heavy Duty obtained a "musicology report" that compared Truth Hurts and Healthy and concluded, in part, that "the "duplication of [certain] distinctive elements in Truth makes it difficult to argue that these similarities are the result of coincidence or that Truth

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-9107-DMG (MAAx)** | Date | August 14, 2020 |
| Title | *Melissa Jefferson v. Justin Raisen, et al.* | Page | 3 of 10 |

was independently created and did not copy these elements from Healthy." *Id.* at ¶ 46. Around the same time that Truth Hurts reached the number one spot on the *Billboard* Hot 100, the Raisens shared the musicology report with Rothman, who "placed 'Truth Hurts' in dispute for a share of authorship, credit, and royalties." *Id.* at ¶ 50. The Raisens and Rothman applied for "Copyright certification" of Healthy, listing "Lizzo, Saint John, the Raisens, and Rothman as joint authors," and eventually received copyright registration number PAu004005173. *Id.* at ¶ 52.

## II.
## MOTION TO DISMISS

After Lizzo filed her claim for declaratory relief, Counterclaimants filed their Answer, which contains counterclaims for: (1) a judicial declaration that they are authors and co-owners of Healthy; (2) a judicial declaration that Truth Hurts was either copied from, or derivative of, Healthy; (3) "further relief" under 28 U.S.C. § 2202; (4) an accounting of the profits that Lizzo and Saint John have enjoyed as a result of their use of Healthy and Truth Hurts; and (5) a constructive trust against Lizzo for the profits from Healthy and Truth Hurts in her possession that rightfully belong to Counterclaimants. *See* Counterclaims.

Lizzo now requests that the Court dismiss Counterclaimants' second claim, and their third, fourth, and fifth claims to the extent that they derive from the second claim (collectively, the "Truth Hurts Claims"). *See* Motion to Dismiss ("MTD") [Doc. # 41].

**A.    Legal Standard**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may seek to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Id.* (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-9107-DMG (MAAx)** | Date | August 14, 2020 |
|---|---|---|---|
| Title | *Melissa Jefferson v. Justin Raisen, et al.* | | Page 4 of 10 |

**B.     Discussion**

    **1.     Counterclaimants Have Not Adequately Alleged an Ownership Interest in Truth Hurts**

Lizzo argues that the Court should dismiss the Truth Hurts Claims because, as a matter of law, a joint author of one copyrightable work does not automatically gain ownership of a derivative work in which the joint author had no hand in creating. MTD at 11-12. The Court agrees. In *Ashton-Tate Corp. v. Ross*, the Ninth Circuit considered a dispute between two software programmers who worked jointly to create a computer spreadsheet program. 916 F.2d 516 (9th Cir. 1990). One programmer, Ross, created the computational component of the program, while another, Wigginton, created the user interface. *Id.* at 517. When the programmers disagreed about how they wanted to "publish and market" the program, Wigginton decided to cease his partnership with Ross and begin working for a large software publishing company. *Id.* Wigginton took "the user interface portion of the [program] prototype with him." *Id.* While he worked at the large publisher, Wigginton used his user interface to collaborate with the publisher's team in creating a new spreadsheet program. *Id.* at 518.

Ross argued that he was a joint author of the new program because he was a joint author of the original program, from which the new program "derived substantially." *Id.* at 520. In rejecting that argument, the Ninth Circuit ruled that, even assuming Ross had a one-half ownership interest in the original program, he had no ownership interest in the new program because the new program was a derivative work. *Id.* at 522. Under such circumstances, "[j]oint authorship in a prior work is insufficient to make one a joint author of a derivative work." *Id.* (citing *Weissmann v. Freeman*, 868 F.2d 1313 (2d Cir.), *cert. denied*, 493 U.S. 883 (1989)). The court relied on *Weissman* to rule that, if Ross were correct, the result "would eviscerate the independent copyright protection that attaches to a derivative work that is wholly independent of the protection afforded the prexisting work." *Id.* (quoting *Weissmann*, 868 F.2d at 1317). The court summed up its holding as follows: "an author of a joint work does not acquire an authorship interest in derivative works that utilize part of the joint work, [but] that author may be entitled to compensation for the use of the original joint work." *Id.* at 523.

Counterclaimants do not dispute *Ashton-Tate*'s meaning or the fact that it binds this Court. Instead, they argue that this case falls within an exception to *Ashton-Tate*'s reasoning set out in *Maurizio v. Goldsmith*, 84 F. Supp. 2d 455 (S.D.N.Y.), *aff'd*, 230 F.3d 518 (2d Cir. 2000). Opp. at 17. In *Maurizio*, a novelist, Goldsmith, wrote the first portion of a manuscript before seeking help writing the rest from a friend, Maurizio. *Maurizio,* 84 F. Supp. 2d at 458. Goldsmith eventually proposed that the pair co-write the entire novel, which Maurizio

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-9107-DMG (MAAx)** | Date | August 14, 2020 |
|---|---|---|---|

| Title | *Melissa Jefferson v. Justin Raisen, et al.* | Page | 5 of 10 |
|---|---|---|---|

understood to mean that both she and Goldsmith would get co-author credit for copyright purposes. *Id.* at 459. Despite that proposal, and despite Maurizio's considerable contribution to the novel, including crafting characters, creating an outline, and writing several chapters, Goldsmith ultimately refused to give her co-author credit. *Id.* at 460-61. In the ensuing lawsuit, the Court denied Goldsmith's motion for summary judgment, which argued that Maurizio had no claim to the novel under *Weissman* and *Ashton-Tate*, because Goldsmith and Maurizio each made contributions to a single work, whereas the parties in *Ashton-Tate* and *Weissman* each used one component of a prior joint work to create second, standalone final products. *Id.* at 467. Relying on *Maurizio*, Counterclaimants argue that the Court should deny Lizzo's MTD because their contributions to Healthy were part of an ongoing creative process that culminated in a single final product—Truth Hurts. Opp. at 19.

But the Counterclaims, as opposed to Counterclaimants' Opposition, do not frame the parties' work in creating Healthy as merely the first step of the creative journey that led to Truth Hurts. To the contrary, Counterclaimants allege in plain terms that the parties created and finished Healthy as a standalone song before Lizzo and Reed purportedly copied elements of Healthy to make Truth Hurts. Indeed, Counterclaimants allege that, after Lizzo recorded Healthy, Justin Raisen "stayed up all night" polishing the song before soliciting feedback on it from the group. Counterclaims at ¶ 27. Raisen and Lizzo also held a second recording session to further fine-tune the song before suggesting that her management team include it on her upcoming EP. *Id.* at ¶¶ 29-30. A representative from Reed's company stated that, at the time, Healthy "h[ad] a shot" of being included on Lizzo's upcoming EP. *Id.* These allegations suggest that Healthy was, and was intended to be, a final product like the original spreadsheet program in *Ashton-Tate*, rather than one chapter of a novel like in *Maurizio*.

Moreover, Counterclaimants allege throughout their pleading that Lizzo "copied" or "derived" Truth Hurts from Healthy. *See, e.g., id.* at ¶¶ 32, 54, 54(e), 65, 66, 74. They do not claim that Lizzo continued working on Healthy until it became Truth Hurts or that Truth Hurts was the end result of a process of revising Healthy. Counterclaimants argue in their Opposition that they allege in paragraph 37 of their Counterclaims that Truth Hurts was the final product of Healthy, but in that paragraph, they allege that Justin Raisen received "congratulations" from various people who "thought" that Truth Hurts was the "final product from" Healthy. *See* Opp. at 14; Counterclaim at ¶ 37. These third-party impressions of Truth Hurts are immaterial, however, because the standard for determining whether a work is a joint work focuses on whether the creators of the work objectively manifested an intent to be co-authors of the work, *Aalmuhammed v. Lee*, 202 F.3d 1227, 1233-36 (9th Cir. 2000), not whether unrelated third-parties assumed that the authors created a work together. Not only do Counterclaimants fail to allege such an objective manifestation of Lizzo's intent to recognize Counterclaimants as co-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-9107-DMG (MAAx)** | Date | August 14, 2020 |
| Title | *Melissa Jefferson v. Justin Raisen, et al.* | Page | 6 of 10 |

authors of Truth Hurts, they allege the opposite—that Lizzo and her team explicitly refused to acknowledge Counterclaimants' participation in making the song. Counterclaim at ¶ 40.

Counterclaimants also point to Lizzo's decision to credit St. John, but not Counterclaimants, as a writer of Truth Hurts based on St. John's participation in the April 2017 recording session. Opp. at 14. But they cite no authority standing for the proposition that a musician's decision to credit one person as a songwriter automatically confers copyright ownership of the song on *other* people who were present during a songwriting session. *See id.*

Finally, Counterclaimants object to Lizzo's submission of the lyrics and recordings of the two songs at issue, and contend that the issue of copyright authorship is not ripe for adjudication at the pleading stage. *Id.* at 15; Objections [Doc. # 52]. But the Court need not resolve these fact-based issues at this stage, because Counterclaimants' claims fail as a matter of law. Without deciding who, in fact, authored the songs at issue, and without reviewing the songs' recordings or lyrics, the Court can determine that Counterclaimants allege that the parties collaborated on, and finalized, one song—Healthy—before Lizzo allegedly copied portions of that song to make Truth Hurts. This factual scenario, as alleged, falls squarely within the rule for which *Ashton-Tate* stands. As a matter of law, therefore, even if Counterclaimants are co-authors of Healthy, they have not alleged any ownership interest in Truth Hurts, which they claim is a derivative work of Healthy. On that basis alone, the Truth Hurts Claims fail.[2]

### 2. Leave to Amend is Appropriate

Counterclaimants' Opposition makes clear that they now intend to allege that their collaboration with Lizzo in creating Healthy was part and parcel of the creative process that led to a single finished work, Truth Hurts. But because, as discussed above, there are no facts in the Counterclaims that plausibly allege a claim under that theory, the Court must consider whether to grant them leave to amend their Counterclaims to allege new and different facts. As a general rule, courts must generously grant leave to amend pleadings. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) ("Leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts.") (internal quotations omitted). In this case, however, the facts that Counterclaimants set out in their pleading—that the parties created one finished product, Healthy, and Lizzo "derived" or "copied" elements of Healthy to make a second finished product, Truth Hurts—are irreconcilably inconsistent with the facts as the Opposition now conceives them—that, all along, the parties intended Healthy to be merely a part of the process of creating a single finished

---

[2] Counterclaimants' objections to the submission of the lyrics and recordings of the two songs are **OVERRULED** as moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-9107-DMG (MAAx)** | Date | August 14, 2020 |
|---|---|---|---|
| Title | *Melissa Jefferson v. Justin Raisen, et al.* | Page | 7 of 10 |

product, Truth Hurts. Although the parties do not address the impact of this contradiction in their papers, the Court must consider whether to grant leave to amend when the amended pleading would contain facts that directly contravene facts in the original pleading.

The Ninth Circuit has offered inconsistent guidance in this area. On one hand, it has determined that "there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations." *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 859-60 (9th Cir. 2007) ("The district court has no free-standing authority to strike pleadings simply because it believes that a party has taken inconsistent positions in the litigation."). On the other, the court has held, both before and after *PAE*, that courts may deny leave to amend if the proposed new or different allegations would "contradict the allegations in the original complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990) ("Although leave to amend should be liberally granted, the amended complaint may only allege other facts consistent with the challenged pleading.") (internal quotations omitted). None of these cases have been overturned, and therefore all three bind this Court.

Most recently, two judges on the same panel wrote competing concurrences advocating for each side of the disagreement, although the majority opinion did not squarely address the issue of whether a litigant may allege contradictory facts in successive pleadings. *See Shirley v. Univ. of Idaho, Coll. of Law*, 800 F.3d 1193 (9th Cir. 2015). In advocating for permitting courts to deny leave to amend when the proposed amendment would contradict the original complaint, Judge Canby expressly called for *en banc* review of the "inconsistency in [Ninth Circuit] precedent." *Id.* at 1195 (Canby, J. concurring).

Given that the Court cannot follow *PAE*, *Corinthian Colleges*, and *Reddy* at the same time, it will adhere to clearer Ninth Circuit precedent requiring that courts must liberally grant leave to amend. *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citing Fed. R. Civ. P. 15) (leave to amend "shall be freely given when justice so requires"). In the interest of caution, therefore, the Court **GRANTS** Counterclaimants leave to amend their Counterclaims. The Court notes, however, that even assuming that litigants may allege inconsistent facts under *PAE*, that approach is not without peril, as inconsistent allegations may be used to undermine a litigant's credibility. *Shirley*, 800 F.3d at 1194 (Kozinski, J. concurring).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-9107-DMG (MAAx)** | Date | August 14, 2020 |
|---|---|---|---|
| Title | *Melissa Jefferson v. Justin Raisen, et al.* | Page | 8 of 10 |

**C.     Conclusion**

In sum, Lizzo's MTD is **GRANTED** because Counterclaimants allege that she copied or derived Truth Hurts from Healthy, a prior standalone joint-work. Since Ninth Circuit case law does not recognize Counterclaimants as owners of Truth Hurts in that scenario, the Truth Hurts Claims fail.

**III.
MOTION TO STRIKE**

Lizzo also moves to strike Counterclaimants' affirmative defenses three, five through 13, 15, 17, and 19.

**A.     Legal Standard**

Federal Rule of Civil Procedure 12(f) allows a court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike on the grounds of insufficiency, immateriality, irrelevancy, and redundancy are not favored . . . and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Bianchi v. St. Farm Fire and Cas. Co.*, 120 F. Supp. 2d 837, 841 (N.D. Cal. 2000) (alteration in original) (quoting *Dah Chong Hong, Ltd. v. Silk Greenhouse, Inc.*, 719 F. Supp. 1072, 1073 (M.D. Fla. 1989)). Without an adequate showing of prejudice, courts may "deny motions to strike even though the offending matter literally [was] within one or more of the categories set forth in Rule 12(f)." *N.Y. City Employees' Ret. Sys. v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009) (internal quotations omitted). The decision to "grant a motion to strike lies within the sound discretion of the district court." *Holmes v. Elec. Document Processing, Inc.*, 966 F. Supp. 2d 925, 930 (N.D. Cal. 2013).

**B.     Discussion**

Lizzo cites prior orders from this Court that apply the same standard set out above. *See* MTD at 14-15. Nonetheless, she fails to identify any specific prejudice that would befall her if the Court declines to strike any of Counterclaimants' affirmative defenses.[3] *See id.* at 14-16.

---

[3] Lizzo makes a passing attempt to do so in her Reply, but the Court need not consider arguments raised for the first time in a reply brief. *Kaffaga v. Estate of Steinbeck*, 938 F.3d 1006, 1018 n.8 (9th Cir. 2019) (a litigant "forfeit[s] an 'argument by raising it for the first time in their reply brief'") (quoting *Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1093 n.3 (9th Cir. 2007)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-9107-DMG (MAAx)** | Date | August 14, 2020 |
| Title | *Melissa Jefferson v. Justin Raisen, et al.* | Page | 9 of 10 |

Despite that oversight, several of Counterclaimants' affirmative defenses are so conspicuously deficient that they cannot survive the pleading stage. Affirmative defense numbers seven, nine, and 13—for "failure of condition," "fraud," and "mistake or inadvertence," respectively—are all subject to Federal Rule of Civil Procedure 9's heightened pleading standard. *See* Counterclaims at Affirmative Defenses; Fed. R. Civ. P. 9(b), (c). Counterclaimants plead these defenses as no more than boilerplate recitations of the elements of the defense. The allegations therefore fall short of the "particularity" that Rule 9 requires and are insufficient to give Lizzo fair notice of the contours of the defense. *Kohler v. Flava Enterprises, Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015) (applying fair notice standard to motion to strike affirmative defenses).

Moreover, Counterclaimants' third, fifth, eighth, tenth, fifteenth, and seventeenth affirmative defenses—for "apportionment of fault," "comparative fault," "failure to mitigate," "intervening and superseding cause," "offset," and "proximate cause," respectively—have nothing to do with the claims at issue in this case. *See* Counterclaims at Affirmative Defenses. These defenses all appear to relate to a potential claim for damages due to negligence, but, given that they are devoid of factual detail, the Court does not understand how they relate to Lizzo's single claim for declaratory relief.

Accordingly, Lizzo's motion is **GRANTED** as to Counterclaimants' third, fifth, seventh, eighth, ninth, tenth, thirteenth, fifteenth, and seventeenth affirmative defenses. Her motion is **DENIED** as to the remaining affirmative defenses for failure to demonstrate how the inclusion of those defenses will prejudice her.

Should a court strike certain defenses, it must also decide whether to grant leave to amend. As discussed above, courts should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Moss v. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (leave to amend should be granted with "extreme liberality"). Because Defendant may be able to cure the deficiencies outlined in this Order with respect to the above-referenced affirmative defenses by pleading additional facts, granting leave to amend those defenses is appropriate.

**C.     Conclusion**

In sum, Lizzo's motion is **GRANTED**, with leave to amend, as to Counterclaimants' third, fifth, seventh, eighth, ninth, tenth, thirteenth, fifteenth, and seventeenth affirmative defenses. It is **DENIED** as to the remaining affirmative defenses.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 19-9107-DMG (MAAx)** | Date | August 14, 2020 |
| Title | *Melissa Jefferson v. Justin Raisen, et al.* | Page | 10 of 10 |

### III.
### CONCLUSION

In light of the foregoing, Lizzo's Motion to Dismiss the Truth Hurts Claims is **GRANTED**, with leave to amend. Lizzo's Motion to Strike is **GRANTED**, with leave to amend, as to Counterclaimants' third, fifth, seventh, eighth, ninth, tentth, thirteenth, fifteenth, and seventeenth affirmative defenses, and **DENIED** in all other respects. Counterclaimants shall file their First Amended Answer and Counterclaims, or notify the Court and Lizzo of their intent not to do so, by **September 4, 2020**. Lizzo shall file her response within 21 days after Counterclaimants file their First Amended Answer and Counterclaims.

**IT IS SO ORDERED.**