KINSELLA WEITZMAN ISER KUMP LLP
LAWRENCE Y. ISER (SBN 094611)
  liser@kwikalaw.com
SHAWN HOLLEY (SBN 136811)
  sholley@kwikalaw.com
GREGORY P. KORN (SBN 205306)
  gkorn@kwikalaw.com
ALLEN SECRETOV (SBN 301655)
  asecretov@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for Defendants and Counterclaimants
Justin Raisen, Jeremiah Raisen, Justin "Yves"
Rothman, and Heavy Duty LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

| | |
|---|---|
| MELISSA JEFFERSON, professionally known as LIZZO, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> JUSTIN RAISEN, an individual, JEREMIAH RAISEN, and individual, HEAVY DUTY MUSIC PUBLISHING, JUSTIN "YVES" ROTHMAN, an individual, and DOES 1-10, <br><br> Defendants. <br><hr> JUSTIN RAISEN, an individual, JEREMIAH RAISEN, and individual, HEAVY DUTY LLC (erroneously sued as HEAVY DUTY MUSIC PUBLISHING), and JUSTIN "YVES" ROTHMAN, an individual, <br><br> Counterclaimants, <br><br> vs. <br><br> MELISSA JEFFERSON, professionally known as LIZZO, an individual, ERIC FREDERIC, an individual, JESSE SAINT JOHN GELLER, an individual, STEVEN CHEUNG, an individual, and ROES 1-10, <br><br> Counterdefendants. | Case No. 2:19-CV-09107-DMG-MAA <br><br> **OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM AND THIRD THROUGH FIFTH AMENDED COUNTERCLAIMS SEEKING ROYALTIES AND OTHER RELIEF RELATED TO SUCH DECLARATION** <br><br> Judge:  Hon. Dolly M. Gee <br> Date:   November 20, 2020 <br> Time:   9:30 a.m. <br> Crtrm.: 8C <br><br> Trial Date:        None Set |

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.     INTRODUCTION ...................................................................................... 5

II.    FACTUAL AND PROCEDURAL BACKGROUND ....................................... 7

    A.     Counterclaimants' Co-Authorship Of "Truth Hurts" ........................ 7

    B.     The Counterclaims .......................................................... 10

III.   ARGUMENT ........................................................................................ 10

    A.     The First Counterclaim Sufficiently Alleges The Elements For
        Co-Authorship Of "Truth Hurts" ................................................ 12

        1.     The Counterclaims Sufficiently Allege "Control" .................... 12

        2.     The Counterclaims Sufficiently Allege "Intent" ..................... 16

    B.     The First Counterclaim Is Not Barred By *Ashton-Tate* .................. 20

    C.     The Court Should Decline To Test The Allegations Of Joint
        Authorship Through A Comparison Of "Healthy" And "Truth
        Hurts" ............................................................................ 25

    D.     The Second Counterclaim, Pled In The Alternative, Does Not
        Contradict Or Support The Dismissal Of The First Counterclaim ....... 28

IV.    CONCLUSION .................................................................................... 29

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3ʳᵈ FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aalmuhammed v. Lee*,
    202 F.3d 1227 (9th Cir. 2000) ...................................................................*passim*

*AmeriPOD, LLC v. DavisREED Constr. Inc.*,
    2017 WL 2959351 (S.D. Cal. July 11, 2017) .................................................. 28

*Andresen v. Int'l Paper Co.*,
    2013 WL 2285338 (C.D. Cal. May 23, 2013) .................................................. 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................... 11

*Ashton-Tate Corp. v. Ross*,
    916 F.2d 516 (9th Cir. 1990) ....................................................................*passim*

*Byton N. Am. Co. v. Breitfeld*,
    2020 WL 3802700 (C.D. Cal. Apr. 28, 2020) .................................................. 28

*Cottrill v. Spears*,
    2003 WL 21223846 (E.D. Pa. May 22, 2003) ................................................. 26

*Creative Dream Prods., LLC v. Houston*,
    2015 WL 12731915 (C.D. Cal. Apr. 2, 2015) ............................................ 16, 27

*Del Rio v. Virgin Am., Inc.*,
    2018 WL 5099720 (C.D. Cal. June 28, 2018) ................................................. 27

*Erwin v. Sestero*,
    2014 WL 12591480 (C.D. Cal. Dec. 18, 2014) ............................................... 29

*Francescatti v. Germanotta*,
    2014 WL 2767231 (N.D. Ill. Jun. 17, 2014) ................................................... 26

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 1997) .......................................................................... 11

*Grady v. Scholastic Inc.*,
    2013 WL 12132199 (C.D. Cal. Jan. 31, 2013) ............................................... 27

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

*Jacobsen v. Young*,
   2010 WL 11549745 (C.D. Cal. Aug. 16, 2010) .................................................27

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984) ........................................................................27

*Maurizio v. Goldsmith*,
   84 F. Supp. 2d 455 (S.D.N.Y. 2000) ....................................................19, 21, 22

*Morrill v. Smashing Pumpkins*,
   157 F. Supp. 2d 1120 (C.D.Cal.2001) ...............................................15, 22, 23

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,
   514 F.3d 856 (9th Cir. 2007) ........................................................................29

*Reinsdorf v. Skechers U.S.A.*,
   922 F. Supp. 2d 866 (C.D. Cal. 2013) ................................................*passim*

*Robertson v. Burdon*,
   2019 WL 2141971 (C.D. Cal. Apr. 3, 2019) .................................16, 17, 27, 29

*Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*,
   2020 WL 4334998 (C.D. Cal. May 6, 2020) .....................................................11

*Warren v. Fox Family Worldwide, Inc.*,
   171 F. Supp. 2d 1057 (C.D. Cal. 2001) .........................................................27

*Weissman v. Freeman*,
   868 F.2d 1313 (2d Cir. 1989) ..........................................................*passim*

**Federal Statutes**

17 U.S.C. § 101 ...............................................................................................12, 24

Copyright Act .......................................................................................................12

**Rules**

Fed. R. Civ. P. 8(d)(2) .........................................................................................28

Rule 12(b)(6)........................................................................................................11

**KINSELLA WEITZMAN ISER KUMP LLP**
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I. INTRODUCTION

3      In moving to dismiss the First Counterclaim filed by Defendants and

4 Counterclaimants Justin and Jeremiah Raisen ("Justin," "Jeremiah," the "Raisens")

5 and Justin "Yves" Rothman ("Rothman"), Plaintiff Melissa Jefferson p/k/a "Lizzo"

6 asks this Court to construe the Ninth Circuit's decision in *Ashton-Tate Corporation*

7 *v. Ross* so broadly that the opinion would disrupt all attempts by collaborators to

8 jointly author copyrighted works, and incentivize such authors—provide them a

9 roadmap, even—to steal and claim for themselves the contributions of their

10 collaborators. The holding in *Ashton-Tate* is far narrower than Lizzo contends; it

11 does not compel the dismissal of Counterclaimants' claim for declaratory relief that

12 they are co-authors of the hit song "Truth Hurts" (let alone at the pleading stage);

13 and the motion should be denied in its entirety.

14      The parties here have many disagreements over the facts and law, but they

15 would certainly agree with one proposition: the rights of authorship of copyrighted

16 musical compositions are critical. Joint authorship of a composition affords one the

17 ability to exploit and license the work (subject to the obligation to account to co-

18 authors), to receive royalties for mechanical and synch licenses, to receive public

19 performance royalties from performing rights organizations, and, in the case of a hit

20 song, to enhance his or her career by that association. Thus, the question of whether

21 Counterclaimants are joint authors of "Truth Hurts" is critical, even if they have

22 other avenues for participating in the profits from the song, as alleged in the

23 alternative in their Second Counterclaim.

24      The Ninth Circuit's seminal decision in *Aalmuhammed v. Lee* provides the

25 elements/factors to be considered in assessing whether Counterclaimants may be

26 deemed co-authors of "Truth Hurts"—including, most importantly, the extent of

27 their contributions to and control over the creation of the composition; and the

28 *objective—not subjective*—manifestations of intent that the work is to be jointly

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  authored and owned. Counterclaimants have pled *ample* facts supporting the

2  existence of the *Aalmuhammed* elements of co-authorship; those allegations must be

3  accepted as true; and the Court's analysis should stop there.

4        Nevertheless, by her motion, Lizzo asks this Court to pierce and test the

5  allegations of the Amended Counterclaims as it would on a motion for summary

6  judgment. First, Lizzo argues that Counterclaimants cannot demonstrate the

7  necessary "intent" of co-authorship, because, when a dispute arose, Lizzo denied

8  any intent to accord them co-authorship of "Truth Hurts." Second, Lizzo argues that

9  the element of control is lacking, because "Truth Hurts" was (purportedly) created

10  without Counterclaimants' knowledge or involvement. As discussed in detail below,

11  both contentions disregard the allegations of the Counterclaims, and both invite the

12  Court to engage in a weighing of facts that is not appropriate at the pleading stage

13  given the weight of the authority holding that the *Aalmuhammed* factors are highly

14  fact-intensive and not properly adjudicated on the pleadings.

15        Nor does the Ninth Circuit's *Ashton-Tate* decision compel the dismissal of

16  Counterclaimants' co-authorship claim. Lizzo contends that Counterclaimants are at

17  most co-authors of a track they co-wrote and recorded in their studio with her

18  referred to as "Healthy," that "Truth Hurts" is at most a derivative work of that

19  track, and under *Ashton-Tate*, Counterclaimants cannot be deemed co-authors of

20  "Truth Hurts." To the contrary, *Ashton-Tate*, as well as the Second Circuit's

21  *Weissman* decision on which it relies, merely hold that joint authorship of a first

22  work does not "automatically" make one a co-author of derivative works. But of

23  course, a joint author of a first work *can* be a co-author of derivative works if the

24  *Aalmuhammed* factors are satisfied; indeed, Lizzo herself claims that she, a co-

25  author of "Healthy," is also a co-author of "Truth Hurts."

26        Here, in accordance with *Aalmuhammed*, Counterclaimants have adequately

27  alleged that they contributed to and exercised control over the writing process that

28  culminated in "Truth Hurts" during the April 2017 recording sessions at the

Kinsella Weitzman Iser Kump LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  Raisens' studio; and they have identified clear indicia of an understanding that the

2  collaborators in these sessions would be deemed co-authors of any resulting work

3  (in this case, "Truth Hurts"), including the compelling fact that Counterclaim

4  Defendant Jesse Saint John Geller ("Saint John") received songwriting credit on

5  "Truth Hurts" based *solely* on his work with Counterclaimants at their April 11,

6  2017 recording session.

7  The fact that Lizzo and Counterclaim Defendant Eric Frederic p/k/a "Ricky

8  Reed" continued to work with and evolve the tracks initially created in collaboration

9  with Counterclaimants does not deprive them of their authorship rights. The law is

10  clear that joint authors under copyright may well exercise control *only during some*

11  *portions* of the writing process, and *only with respect to certain aspects* of the work.

12  If, as Lizzo argues, *Ashton-Tate* dictates that her finalization of the music created

13  with Counterclaimants created a new "version" as to which they could not be

14  authors as a matter of law, then copyright law would reserve authorship to she or he

15  who is last in time to make changes to a jointly authored work. Perverse incentives

16  would flow from such a rule: in *every* instance of a collaboratively created work,

17  one could cut out his or her co-author merely by unilaterally and surreptitiously

18  making final changes to the work, and then deeming the end product a "derivative

19  work" for which she or he alone is the author.

20  Counterclaimants have adequately alleged the prerequisites of joint

21  authorship, and their claim does not fail under *Ashton-Tate*. The motion to dismiss

22  should be denied.

23  **II. FACTUAL AND PROCEDURAL BACKGROUND**

24  **A.**   **Counterclaimants' Co-Authorship Of "Truth Hurts"**

25  After being approached several times in 2016, the Raisens agreed in January

26  2017 to host at their personal studio a songwriting and recording session with Lizzo.

27  (Dkt. 58 ("Amended Counterclaims"), ¶¶ 16-17.) Rothman and Saint John, two

28  other songwriters, were invited to join the session. (*Id.*, ¶ 18.) The goal was for the

**Kinsella Weitzman Iser Kump llp**
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   Raisens, Rothman, Saint John, and Lizzo to compose and record new songs

2   featuring Lizzo. (*Id.*, ¶ 19.)

3       The first recording session occurred on April 11, 2017. (*Id.*, ¶ 22.) Neither

4   Lizzo nor Saint John brought any preexisting music or lyrics to the session. (*Id.*)

5   Instead, the Raisens and Rothman prepared several instrumental tracks in advance of

6   the session, which they then played for Lizzo on April 11. (*Id.*, ¶ 21.) Lizzo liked

7   one of the tracks in particular, and the group took it from there, working together to

8   add additional beats, music, and vocals. (*Id.*, ¶¶ 22-23.) Through this collaboration,

9   each of the Raisens, Rothman, and Lizzo contributed inseparable and interdependent

10  non-trivial amounts of creative, original, and intellectual expression to the track.

11  (*Id.*, ¶ 22-25.)

12      During this writing process, Saint John showed the group an internet meme

13  that read, "I did a DNA test and found out I'm 100% that bitch." (*Id.*, ¶ 23.)

14  Jeremiah enthusiastically suggested it be included as a lyric in the song. (*Id.*) Lizzo

15  and Saint John resisted at first, stating the line was too "goofy" or "cheesy" for

16  inclusion, but Jeremiah persisted and convinced them, and the "100%" lyric was

17  added to the second verse. (*Id.*, ¶¶ 23-24.) Lizzo sang the 100% lyric using the

18  melodies and rhythms that the group had collaboratively composed for the first

19  verse. (*Id.*, ¶ 23.) As the "100%" lyric and other lyrics and melody emerged through

20  the collaboration, the Raisens and Rothman continuously composed and revised the

21  drum grooves, keyboard/synth parts, and other instrumental portions of the track.

22  (*Id.*) Lizzo loved the resulting track, which the group called "Healthy," telling the

23  Raisens that she and her regular producer, Counterclaim Defendant Reed, had "been

24  trying to do something like this for a while." (*Id.*, ¶¶ 26-27.)

25      After the initial April 11 session, Reed provided notes and asked if the

26  Raisens were open to changing some of the lyrics. (*Id.*, ¶¶ 28-29.) The Raisens

27  agreed, and so Lizzo returned their studio on April 17 for another session. (*Id.*)

28

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1    Lizzo's team communicated with the Raisens about the possibility that the

2    track would be included on Lizzo's upcoming album. (*Id.*, ¶¶ 30.) Ultimately,

3    however, the track called "Healthy" was not released on the album; in its place,

4    rather, was a track entitled "Truth Hurts." (*Id.*, ¶¶ 34.)

5    Counterclaimants are informed and believe, and have alleged, that "Truth

6    Hurts" is simply the "culmination of the April 2017 recording sessions" between

7    Lizzo and the Raisens. (*Id.*, ¶¶ 32, 55.) On information and belief, Lizzo and Reed

8    continued working on and evolving "Healthy" after those recording sessions, and

9    through that process arrived at a "finished product" that they released under the

10   name "Truth Hurts." (*Id.*, ¶¶ 32, 52, 55.) "Truth Hurts" contains precise lyrics and

11   melody that were created during Lizzo's collaboration with the Counterclaimants,

12   including the now-iconic line "I just did a DNA test, turns out I'm a hundred percent

13   that bitch," sung by Lizzo using the identical, distinctive melody in which it was

14   sung in "Healthy." (*Id.*, ¶ 52.) Moreover, numerous other musical elements co-

15   authored by Lizzo, the Raisens, and Rothman merged into the final product of the

16   collaboration, "Truth Hurts." (*Id.*)

17   After "Truth Hurts" was released in September 2017, Justin received

18   congratulations from people who had heard the track referred to as "Healthy" and

19   thought that "Truth Hurts" was the completed version of that song. (*Id.*, ¶ 36.) Yet,

20   songwriting credits on "Truth Hurts" were accorded solely to Lizzo, Reed, a

21   songwriter named Steven Cheung p/k/a "Tele," and Saint John. (*Id.*, ¶¶ 34-35.)

22   Notably, Saint John's *only* involvement in composing "Truth Hurts" was his

23   participation in the first of the two April 2017 recording sessions, and he is credited

24   as a co-author of "Truth Hurts" *on that basis alone*. (*Id.*, ¶ 35.) Nevertheless, the

25   Raisens and Rothman received no comparable songwriting credit for their work at

26   those same sessions. (*Id.*)

27   Lizzo admitted during a March 2019 phone call with Justin that "Truth Hurts"

28   evolved out of the music that had been written during the sessions at the Raisens'

1   studio. (*Id.*, ¶ 42.) That notwithstanding, Lizzo has persisted in refusing to accord

2   the Raisens and Rothman credit, and has gone so far as to threaten to damage the

3   Raisens' reputations in the industry if they continued claiming co-authorship of the

4   composition. (*Id.*, ¶ 43.) This lawsuit followed.

**B.     The Counterclaims**

6   Counterclaimants' First Counterclaim seeks a judicial declaration that they are

7   joint authors and co-owners of the musical composition "Truth Hurts," including the

8   copyright therein, and are entitled to royalties and profits earned from the

9   exploitation of "Truth Hurts" as the result of such joint authorship. (*Id.*, ¶ 54).

10  Counterclaimants allege that "Truth Hurts" is the culmination of the April 2017

11  recording sessions with Lizzo, the Raisens, Rothman, and Saint John, and that the

12  intent and understanding was that all of these collaborators would be considered co-

13  authors of the music they composed, as evidenced, *inter alia*, by the fact that Saint

14  John received credit on "Truth Hurts" based solely on his participation in the first of

15  the two recording sessions at the Raisens' studio. (*Id.*, ¶¶ 19, 34-35, 56.)

16  Counterclaimants' Second Counterclaim, *pled in the alternative*, seeks a

17  declaration that even if "Truth Hurts" is not the culmination of the April 2017

18  sessions, and even if they are not co-authors of the song, (1) the Raisens and

19  Rothman are co-authors of the track referred to as "Healthy," (2) "Truth Hurts" is a

20  derivative work thereof because it copies copyrightable expression from "Healthy,"

21  and (3) the Raisens and Rothman are thus entitled to an accounting from the

22  exploitation of their work. (*Id.*, ¶¶ 60-65.)

23  The Third, Fourth, and Fifth Counterclaims seek an accounting, constructive

24  trust, and other relief in the event Counterclaimants prevail in obtaining declaratory

25  relief on either of the First or Second Counterclaims.

**III. ARGUMENT**

27  Lizzo moves to dismiss the First Counterclaim, as well as the Third through

28  Fifth Counterclaims to the extent they are premised on it. "In considering a motion

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the

2  complaint, as well as all reasonable inferences to be drawn from them." *Andresen v.*

3  *Int'l Paper Co.*, 13-2079-CAS (AJWx), 2013 WL 2285338, at *2 (C.D. Cal. May

4  23, 2013) (citing *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998)); *see also*

5  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) ("The Rule 8

6  standard contains a powerful presumption against rejecting pleadings for failure to

7  state a claim.") (internal quotation omitted). "The complaint must be read in the

8  light most favorable to the nonmoving party." *Id.* (citing *Sprewell v. Golden State*

9  *Warriors*, 266 F.3d 979, 988 (9th Cir.2001)). After accepting as true all non-

10  conclusory allegations and drawing all reasonable inferences in favor of the

11  plaintiff, the court then determines whether the complaint alleges a plausible claim

12  for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). Importantly, "[t]he

13  issue on a motion to dismiss for failure to state a claim is not whether the claimant

14  will ultimately prevail, but whether the claimant is entitled to offer evidence to

15  support the claims asserted." *Rumble, Inc. v. Daily Mail & Gen. Tr. PLC*, 19-08420-

16  CJC (EX), 2020 WL 4334998, at *2 (C.D. Cal. May 6, 2020)

17  　　Each of the arguments Lizzo asserts in support of her motion is without merit:

18  (1) the First Counterclaim pleads ample facts establishing the elements of co-

19  authorship set forth in *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000); (2) the

20  Raisens' and Rothman's claims of co-authorship of "Truth Hurts" are *not* barred by

21  the holding in *Ashton-Tate Corp. v. Ross*, 916 F.2d 516 (9th Cir. 1990); (3) Lizzo's

22  contention that the track recorded at the Raisens' studio, "Healthy," and the track

23  released on her album, "Truth Hurts," are not substantially similar is inapposite,

24  because substantial similarity is *not* the test for joint authorship; and (4)

25  Counterclaimants' co-authorship claim in its First Counterclaim is not inconsistent

26  with the Second Counterclaim, and even if it were, the Federal Rules of Civil

27  Procedure expressly permit litigants to plead alternative, inconsistent theories. For

28  these reasons, as discussed in detail below, the motion should be denied.

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

**A.**     <u>The First Counterclaim Sufficiently Alleges The Elements For Co-Authorship Of "Truth Hurts"</u>

The Copyright Act defines a joint work as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. "[F]or a work to be a 'joint work' there must be (1) a copyrightable work, (2) two or more 'authors,' and (3) the authors must intend their contributions be merged into inseparable or interdependent parts of a unitary whole." *Aalmuhammed*, 202 F.3d at 1231.

In assessing claims of joint authorship, courts consider: (1) whether an author exercises control over a work, acts as the inventive or master mind of the work, or creates or gives effect to an idea; (2) whether there exists an objective manifestation between the alleged co-authors of a shared intent to be co-authors; and (3) whether the audience appeal turns on both contributions and the share of each in its success cannot be appraised. *Aalmuhammed*, 202 F.3d at 1233-36. "Due to the variety of creative relationships to which these factors apply, however, the factors 'cannot be reduced to a rigid formula.'" *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 872 (C.D. Cal. 2013) (quoting *Aalmuhammed*, 202 F.3d at 1235).

Lizzo argues that the Counterclaims fail to plead sufficient facts supporting the first two elements of co-authorship—control and intent. In fact, Counterclaimants plead ample facts supporting both factors, and the motion to dismiss on this basis should be denied.

**1.**     **The Counterclaims Sufficiently Allege "Control"**

*Aalmuhammed* states that a joint author "superintend[s]" or exercises control over a work by, for example, "position[ing]" or "arranging" elements of the work, or acting as the "the inventive or master mind" of the work, who "creates, or gives effect to the idea." *Aalmuhammed*, 202 F. 3d at 1234. Here, the Counterclaims allege that "Truth Hurts" embodies music and lyrics composed during the April 2017 recording sessions with Lizzo (Amended Counterclaims, ¶¶ 23-24, 52), and

the pleading is replete with allegations supporting that the Raisens and Rothman superintended this process, positioned and arranged musical elements, and generally controlled the work that was being created. Among other things, it is alleged that in composing and producing the track referred to as "Healthy":

- The recording sessions took place in the Raisens' home studio, utilizing their musical instruments and recording equipment (*id.*, ¶¶ 15-17);

- In advance of the sessions, the Raisens and Rothman composed and recorded instrumental tracks and beats that were then used as the basis for the recordings with Lizzo (*id.*, ¶ 21);

- Neither Lizzo nor Saint John brought any preexisting music or lyrics to the session (*id.*, ¶ 22);

- The Raisens and Rothman were integrally involved in, and in fact had exclusive control over, the writing and arrangement of the music and drum beats in the recordings created with Lizzo (*id.*, ¶ 23);

- Counterclaimants further assisted in and exercised control over the choice of lyrics to be included in the composition (including in particular the "100%" lyric), as well as the vocal melodies that were written (*id.*);

- Counterclaimants exercised control over the overall process of producing and recording music at the April 2017 sessions (*id.*, ¶¶ 21-23, 28);

- Counterclaimants then exercised control following each recording session, when they had exclusive responsibility for possessing and cleaning up the recordings and distributing them to others for review (*id.*, ¶¶ 27, 29).

Because it is alleged that the track referred to as "Healthy" thereafter evolved into a final product released as "Truth Hurts"—and because the Court must accept that allegation as true for purposes of this motion—the allegations listed above are more than sufficient to plead that Counterclaimants exercised the necessary control over the work at issue by superintending the writing process and positioning and arranging copyrightable elements. *See Aalmuhammed*, 202 F. 3d at 1234.

**KINSELLA WEITZMAN ISER KUMP LLP**
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   Ignoring these allegations, Lizzo argues that Counterclaimants cannot

2   adequately pled control over "Truth Hurts" because "they were unaware of Lizzo's

3   creation of 'Truth Hurts' and didn't learn of the song until it was commercially

4   released." (Dkt. No. 60-1 ("Mot."), p. 13:7-12.) This argument misstates the

5   allegations of the Counterclaims. As is alleged, Counterclaimants *were* aware of and

6   exercised control over the composing of the music and lyrics for "Truth Hurts" that

7   occurred during the April 2017 sessions (Counterclaims, ¶¶ 20-29), but were merely

8   unaware that subsequent to these sessions, Lizzo and Reed continued to work with

9   and evolve the music so as to arrive at a finalized product. (I*d*., ¶ 32.)

10   Effectively, then, Lizzo's argument is that if one who has co-authored a work

11   is unaware that his/her co-author subsequently modified or added to the work, then

12   as a matter of law that author cannot meet the element of control and is denied

13   authorship. This argument, if adopted by the Court, would lead to draconian and

14   untenable results. If Lizzo is correct, then any author of a literary, musical, or other

15   copyrighted work could always deprive co-authors of their rightful share of a

16   copyright interest by surreptitiously making changes to the work on their own at the

17   tail end of the collaboration, and without involving the other putative co-authors.

18   That cannot be, and is not, the law. Not only can an author exercise control

19   only during certain times of the creative process and still meet the control element of

20   *Aalmuhammed*, but the control factor can even be satisfied "where 'both parties had

21   creative control over separate and indispensable elements of the completed

22   product.'" *Reinsdorf*, 922 F. Supp. 2d at 872 (quoting *Morrill v. Smashing

23   Pumpkins*, 157 F. Supp. 2d 1120, 1124 (C.D.Cal.2001) citing *Eagle Rock Entm't Inc.

24   v. Coming Home Prods., Inc.*, 03–571 FMC (AJWx), 2004 WL 5642002 *13 (C.D.

25   Cal. Sept. 1, 2004)).

26   In *Reinsdorf*, the plaintiff photographer was engaged by the defendant to

27   conduct five photoshoots in connection with the defendant's marketing efforts.

28   *Reinsdorf*, 922 F. Supp. 2d at 870. The plaintiff exercised control over the

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

photography sessions by posing the models, arranging the lighting, etc.; but after those sessions, the plaintiff delivered raw photographs to the defendant, who modified or "enhanced" the images for use in their advertisements. *Id*. A dispute arose over ownership of the images, and on summary judgment, the court found that the facts supported that *both* parties had exercised control so as to establish joint authorship, because "each party had exclusive, or-near exclusive, power over the distinct constituent parts of the unitary whole." *Id*. at 872-873.

Similarly, in *Morrill v. Smashing Pumpkins*, the court found on summary judgment that the writers and recording artists of a song, and the creator of filmed music video containing the song, could *each* demonstrate "control" as needed to be co-authors of the music video. 157 F. Supp. 2d 1120, 1124 (C.D. Cal. 2001) ("In a music video, the creator of the songs and the creator of the images are both 'the inventive or master mind[s]' whose work comes together to produce a unitary whole. Since both parties had creative control over separate and indispensable elements of the completed product, the first *Aalmuhammed* factor favors a finding of joint authorship.").

In *Reinsdorf* and *Morrill*, none of the parties exercised control over the work at all times, and none exercised control over all aspects of the work; and yet they were all found to have met the first factor of *Aalmuhammed*.[1] Thus, neither case can be reconciled with Lizzo's argument here. If only the person who last exercises control can be an author, then in *Reinsdorf* authorship would have vested exclusively in the defendant, who did not take the photographs, but was the last in time to edit and enhance them; and in *Morrill* authorship would have vested exclusively in the filmmaker, who was last in time to control the work by editing the

---

[1] *Accord* 2 Patry on Copyright § 5:23 ("[T]oo much emphasis may be placed in individual cases on decision-making authority since at some point where disagreements arise on the content of the work, one person ultimately may need to have final say ….").

15

Opposition to Motion to Dismiss First Amended Counterclaims

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  video footage into a final product.

2      Counterclaimants sufficiently plead their control over the work at issue,

3  regardless of whether control was exercised only during some stages of the process,

4  and only over certain "constituent parts of the unitary whole." *Reinsdorf*, 922 F.

5  Supp. 2d at 872-873. At a minimum, this highly fact-intensive issue should not be

6  resolved against them at the pleading stage. *See Robertson v. Burdon*, 18-00397-

7  JAK (SHKx), 2019 WL 2141971, at *8 (C.D. Cal. Apr. 3, 2019) (holding that

8  whether a plaintiff's "contributions to [] songs ultimately support his claim for joint

9  authorship under the *Aalmuhammed* test is an issue of fact, which cannot be decided

10  on a motion to dismiss"); *see Creative Dream Prods., LLC v. Houston*, 14-7714 SS,

11  2015 WL 12731915, at *5 (C.D. Cal. Apr. 2, 2015) (holding that "[w]hether an

12  alleged author has 'exercised control' over a work" is a "fact-specific inquir[y] that

13  cannot be resolved on a motion to dismiss unless the underlying facts are not

14  disputed").

15      **2.     The Counterclaims Sufficiently Allege "Intent"**

16      The second *Aalmuhammed* factor asks whether there exists an objective

17  manifestation of the parties' shared intent to be co-authors. *Aalmuhammed*, 202 F.3d

18  at 1234. This intent factor, like the other *Aalmhuammed* factors, "cannot be reduced

19  to a rigid formula, because the creative relationships to which they apply vary too

20  much. Different people do creative work together in different ways, and even among

21  the same people working together the relationship may change over time as the

22  work proceeds." *Id*. Nonetheless, alleging that musicians "[j]ointly creat[ed] a song

23  from a collaborative creation of lyrics and music" clearly supports the inference that

24  the musicians "shared an intent that the songs would be written together" and

25  supports a claim of co-authorship. *Robertson*, 2019 WL 2141971, at *8.

26      Lizzo argues that "Defendants again fail to plead that Lizzo displayed any

27  objective manifestations of intent to co-own 'Truth Hurts' and again plead the

28  opposite." (Mot., p. 11-13.) Not true. The Counterclaims plead substantial facts

1  supporting the objective intent of the parties to share authorship over the results of

2  their collaboration.

3      *First*, as in *Robertson*, it is alleged that Lizzo, the Raisens, Rothman, and

4  Saint John jointly collaborated in the creation of music and lyrics during the April

5  2017 sessions. (Amended Counterclaims, ¶¶ 22-25.) That alone supports an

6  inference that they intended to be co-authors of the compositions they wrote

7  together. *Robertson*, 2019 WL 2141971, at *8.

8      *Second*, it is alleged that after the Raisens shared with Lizzo and Reed the

9  recording referred to as "Healthy," Reed and Lizzo's other representatives were in

10  regular contact with Counterclaimants and/or their representatives about the track

11  being included on Lizzo's album. (Amended Counterclaims, ¶¶ 28-30.) Manifestly,

12  they continued to consult with Counterclaimants after the recording sessions

13  because it was understood that the Raisens and Rothman would receive writing

14  credit on any songs created during their collaboration with Lizzo.

15      Lizzo will presumably respond that these allegations only support an

16  inference that Counterclaimants would be deemed co-authors of "Healthy" and not

17  "Truth Hurts." But any such argument improperly seeks to pierce the allegations of

18  the Counterclaims. As discussed above, the allegations are that "Truth Hurts" is the

19  culmination of the songwriting collaboration between Lizzo and Counterclaimants

20  (*id.*, ¶¶ 32, 54), as evidenced by, for example, the musicological similarities between

21  the tracks (*id.*, ¶ 52), and by Lizzo's admission that "Truth Hurts" arose out her

22  songwriting work with Counterclaimants (*id.*, ¶ 42). Accepting these allegations, as

23  the Court must, then the clear indicia that the parties intended to be co-authors of the

24  music they wrote collaboratively applies equally to "Truth Hurts."

25      Moreover, the Counterclaims plead facts that support an objective

26  manifestation of intent of co-authorship *specifically with respect to* "Truth Hurts."

27  Notably, this case is much unlike *Weissman*, where the Second Circuit found that an

28  author's publicly identifying herself as the sole author of a work was some evidence

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   "that this work was not intended to be joint." 868 F.2d at 1320. Lizzo has conceded

2   from the outset that "Truth Hurts" was co-authored with multiple songwriters.

3   Moreover, she credited Saint John as one of those songwriters based *solely* on his

4   contributions during the first recording session with the Raisens, Rothman, and

5   Lizzo on April 11, 2017—a compelling indicator that Counterclaimants, who

6   collaborated *with Saint John*, *at the same time*, *on the same music composition*, were

7   likewise among the songwriters of "Truth Hurts." (Amended Counterclaims, ¶¶ 34-

8   35.)

9        In its prior Order, the Court was dismissive of the fact of Saint John's

10   songwriting credit because Counterclaimants "cite[d] no authority standing for the

11   proposition that a musician's decision to credit one person as a songwriter

12   automatically confers copyright ownership of the song on *other* people who were

13   present during a songwriting session." (Dkt. No. 57, p. 6.) Counterclaimants agree

14   that such a "proposition" would be a bridge too far. Obviously, the fact that Saint

15   John was deemed a co-author of "Truth Hurts" for his contributions in the Raisens'

16   recording studio would not necessarily mean everyone in the room—even including

17   those who contributed no musical or lyrical ideas—would also be co-authors.

18        But, if the Court's inclination is that the granting of songwriting credit to

19   Saint John is not relevant *at all*, then Counterclaimants respectfully disagree. Setting

20   aside works-for-hire, the identification of individuals as authors in a copyright

21   application and registration is a representation to the public that they are exactly

22   that—authors under copyright law. Thus, Lizzo's crediting of Saint John as a writer

23   could not be pawned off as charity; it is an indication that he was, in fact, an author

24   of "Truth Hurts." And if, as is alleged (and also appears undisputed by Lizzo), Saint

25   John's contributions during the Raisens' recording session on April 11, 2017

26   rendered him an author of "Truth Hurts," this is *compelling, objective* indicia of a

27   shared intent and understanding among all of the parties that the collaborators at the

28   April 2017 sessions, Counterclaimants included, are co-authors of that composition.

1    In arguing that no intent of co-authorship can be found, the motion asserts that

2    "Defendants continue to allege 'that Lizzo and her team explicitly refused to

3    acknowledge Counterclaimants' participation in making the song.'" (Mot., p. 13:3-

4    4.) But the law is clear that *Aalmuhammed's* intent factor is not determined by the

5    *subjective* intent of the parties. As the Ninth Circuit recognized in discussing the

6    objective nature of the intent inquiry: "We say objective manifestations [of intent]

7    because, were the mutual intent to be determined by subjective intent, it could

8    become an instrument of fraud, were one coauthor to hide from the other an

9    intention to take sole credit for the work." *Aalmuhammed*, 202 F.3d at 1234.

10   Even more unreliable than Lizzo's statements of subjective intent would be

11   her subjective intent expressed *after the fact*, as is the case here. It is not

12   informative, let alone dispositive, that after the collaboration ended—and after Lizzo

13   began to see the financial prospects for "Truth Hurts"—she denied any intent to

14   have co-authored the song with Counterclaimants. In *every* litigated dispute like this

15   action, one of the parties is denying an intent to have co-authored the work at issue.

16   If such denials precluded a finding of intent under *Aalmuhammed*, it would be

17   impossible to demonstrate co-authorship in a disputed case.

18   The holding in *Maurizio v. Goldsmith*, 84 F. Supp. 2d 455 (S.D.N.Y. 2000) is

19   illustrative. The defendant there *denied* any intent to have co-authored a book in

20   which the plaintiff collaborated; but this subjective assertion of a lack of intent was

21   of no import, the court found, because the plaintiff had proffered sufficient evidence

22   upon which a trier of fact could reasonably find intent of joint authorship, including

23   that the defendant asked plaintiff to co-write the book, expressed excitement for its

24   potential, and did not indicate a change in mind about co-authorship until the

25   moment she rejected plaintiff's request for co-authorship and profits from the book.

26   *See id*., at 465-466 ("[A] trier of fact could reasonably find intent based on

27   Goldsmith's April 20 request that Maurizio co-author FWC, followed by Maurizio's

28   work on the outline and draft chapters until May 10, 1990.")

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   Here, the Counterclaimants adequately allege numerous facts supporting an

2   objective manifestation of the parties' intent to be co-authors of "Truth Hurts"

3   notwithstanding Lizzo's self-serving assertions to the contrary.

**B.**   **The First Counterclaim Is Not Barred By _Ashton-Tate_**

5   Lizzo contends that even if Counterclaimants adequately allege the elements

6   of co-authorship under _Aalmuhammed_, the First Counterclaim is barred as a matter

7   of law and should be dismissed pursuant to _Ashton-Tate_. As discussed below, Lizzo

8   reads _Ashton-Tate_ too broadly, and in a matter that is not just irreconcilable with

9   other court decisions on co-authorship, but that would upend virtually all attempts

10   by collaborators to co-author works.

11   In its opinion in _Weissman v. Freeman_, 868 F.2d 1313 (2d Cir. 1989), the

12   Second Circuit held that the lower court was "mistaken" in concluding "that joint

13   authorship of the prior existing works _automatically_ makes the two joint authors co-

14   owners of the derivative work." _Id._ at 1317 (emphasis added). Relying on _Weissman_,

15   the Ninth Circuit in _Ashton-Tate_ held that "[j]oint authorship in a prior work is

16   _insufficient_ to make one a joint author of a derivative work." 916 F.2d at 522

17   (emphasis added).

18   Counterclaimants do not contest that joint authorship of one work does not

19   "automatically" (in the words of _Weissman_) make the joint authors co-owners of a

20   subsequent derivative work, and is alone "insufficient" (in the words of _Ashton-Tate_)

21   to do so. They do contest, however, Lizzo's attempt to construe these cases as

22   categorically precluding Counterclaimant's authorship claim here.

23   Lizzo's argument effectively construes _Weissman_ and _Ashton-Tate_ as holding

24   that where two contributors co-author a joint work, and one of the two continues to

25   modify and enhance the work without the knowledge or involvement of the other, it

26   follows not just (1) that a derivative work is created (which may, in fact, be the

27   case), but (2) that the person responsible for the subsequent modifications is _in all_

28   _cases_ the sole author of that derivative work, with the ability to exploit it without

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

Kinsella Weitzman Iser Kump LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
Tel 310.566.9800 • Fax 310.566.9850

1  any attribution to her co-contributor.

2      The effect of Lizzo's argument would be to vest authorship and ownership in

3  undeniably jointly-created works in the one person who is last in time to add to or

4  modify the work, thereby depriving legitimate co-contributors of authorship and

5  ownership rights in every such case that a new or different version of the work is

6  created by their fellow authors. This proposition is _not_ the holding of *Weissman* or

7  *Ashton-Tate*, and it is belied by numerous cases including, *but not limited to*, the

8  *Maurizio v. Goldsmith* case discussed extensively in Counterclaimants' prior

9  briefing. (*See* Dkt. No. 46, pp. 17 *et seq.*)

10      In *Maurizio*, the plaintiff (Maurizio) brought a claim for joint authorship and

11  an accounting against the defendant (Goldsmith) relating to a manuscript that they

12  prepared together. Maurizio alleged that she made numerous contributions to the

13  book, including creating characters and ideas, and writing two chapters, believing

14  she would be credited as a co-author of an eventual novel. 84 F. Supp. 2d at 459-

15  460. However, Goldsmith subsequently excluded Maurizio from the writing process,

16  completed the manuscript on her own, and sold the manuscript to a film studio, all

17  without crediting or involving Maurizio. *Id.* at 460.

18      The defendant (Goldsmith) relied on *Weissman* and *Ashton-Tate* in arguing on

19  a motion for summary judgment that "even if Maurizio was a joint author of the

20  outline and draft chapters, she was not a joint author of [the manuscript] itself

21  because the novel is Goldsmith's derivative work of these earlier joint works." *Id*. at

22  467. The court disagreed that *Weissman* and *Ashton-Tate* necessarily precluded the

23  plaintiff's claim, concluding that a jury could find that "at the time Maurizio made

24  her contributions to the outline and draft chapters, both parties intended that these

25  contributions were being made as part of the development of [the manuscript] itself,

26  and that some of Maurizio's contributions might be 'merged' with Goldsmith's work

27  in [the manuscript]." *Id.* at 459. In other words, Maurizio's work "may have been

28  intended to be a part of the process of completing the final product—[the

1   manuscript]," which was "not the situation in either *Weissmann* or *Ashton–Tate.*" *Id.*

2   The allegations here are analogous to those in *Maurizio*, and they make out a

3   claim of co-authorship in the same way. Counterclaimants allege that they

4   collaborated with Lizzo in the writing of music and lyrics as part of a process that

5   led to a "final product"—in this case, the song "Truth Hurts." (Amended

6   Counterclaims, ¶¶ 19, 23, 54-56.) If Counterclaimants adequately allege the

7   elements of control and intent with respect to the composition for "Truth Hurts"—

8   and they do, as discussed above—there is nothing in *Weissman* or *Ashton-Tate* that

9   precludes their claim of co-authorship to that composition. Again, those cases

10  merely acknowledge that co-authorship of a first work does not *automatically* make

11  one a co-author of any subsequent derivative work.

12  Lizzo portrays *Maurizio* as an outlier, but in fact, other cases arrive at similar

13  results, even if they do so without expressly distinguishing *Weissman* and *Ashton-*

14  *Tate*. In *Reinsdorf*, discussed above, the issue arose as to the co-authorship of

15  photographic images that were first photographed by the plaintiff, and then

16  subsequently edited, enhanced, and modified by the defendant. 922 F. Supp. 2d 866.

17  Under Lizzo's reading of *Ashton-Tate*, the images as subsequently modified by the

18  defendant would be derivative works of the original photos as to which, *per se*, the

19  plaintiff would not be a co-author. Yet, the court found that both the "control and

20  audience appeal factors suggest plural authorship," and that an issue of material fact

21  existed as to the co-authorship in the "finished advertisements." *Id.* at 875.

22  Similarly, in *Morrill v. Smashing Pumpkins*, the district court found (as a

23  matter of law) that singer/songwriter Billy Corgan was the co-author of a long-form

24  video that had been created by the plaintiff to promote Corgan's earlier band, "The

25  Marked," because Corgan contributed music to the video. 157 F. Supp. 2d at 1122-

26  1127. The district court reasoned: "Although Morrill may have directed the

27  production and editing of the video, Corgan and The Marked had sole control over

28  the writing and performing of the video's music." *Id.* at 1124. "In a music video,"

**KINSELLA WEITZMAN ISER KUMP LLP**
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   the court added, "the creator of the songs and the creator of the images are both 'the

2   inventive or master mind[s]' whose work comes together to produce a unitary

3   whole." *Id.*

4       Here again, the result in *Morrill* cannot be reconciled with Lizzo's argument.

5   It was undisputed that the plaintiff filmmaker in *Morrill* was responsible for the

6   final editing of the video, and that Billy Corgan had no involvement in the editing

7   process. Per Lizzo's reading of *Weissman* and *Ashton-Tate*, the video would

8   constitute a derivative work of Corgan's music (which it would) as to which Corgan

9   could not be a co-author. Nevertheless, the result in *Morrill*, which is non-

10  controversial, is that, whether or not the video was a derivative work of Corgan's

11  music, because the intent existed for Corgan and the plaintiff to merge their work

12  together "to produce a unitary whole," Corgan was rightly deemed a co-author.

13      If, in *Reinsdorf* and *Morrill*, the plaintiffs could be deemed co-authors of the

14  works at issue there despite the fact that the works were substantially modified and

15  enhanced *subsequent to* the plaintiffs' involvement, then there is no legal reason

16  Counterclaimants cannot be co-authors of "Truth Hurts," assuming the

17  *Aalmuhammed* factors are met.

18      Lizzo argues throughout the motion that Counterclaimants cannot fit within

19  any exception to *Weissman* and *Ashton-Tate* because their collaboration with her

20  resulted in the track "Healthy," which was a "standalone" work that was capable of

21  being exploited on its own. This is a distinction without a difference. The raw

22  photographs shot by the plaintiff in *Reinsdorf* were "standalone" works that could

23  have been exploited without the defendant's subsequent editing and modification of

24  them. Billy Corgan's music recordings in *Morrill* were "standalone" works that

25  could and were exploited by him prior to and separate from the defendant's use of

26  the recordings in a video. In neither case did this bely that the final works were

27  jointly authored and owned.

28

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

* * *

Lizzo will have an opportunity on summary judgment or at trial to test Counterclaimants' allegations of co-authorship; but at this pleading stage, the Court should reject her invitation to create a bright-line *per se* rule (1) that every modification to a jointly authored work creates a new derivative work, (2) which derivative work is authored and owned *exclusively* by whichever of the authors is responsible for the modification. This is *not* the holding of *Ashton-Tate*, and such a rule would create mass chaos in the world of co-authored copyrightable works. Two songwriters (*e.g.,* Lennon and McCartney) could write a composition (*e.g.*, "A Day in the Life")—a "standalone" work worthy of exploitation—and if at the end of the collaboration McCartney unilaterally added a verse, or changed some lyrics, he could record and release the modified song and claim sole writing credit. Two screen writers (*e.g.*, Lucas and Kasdan) could write a screenplay (*e.g.*, "Raiders of the Lost Ark")—another "standalone" work worthy of exploitation—and if Kasdan surreptitiously added new scenes or characters, or modified or polished existing scenes, he could rightly deem the result a derivative work that is owned exclusively by him, and that may be sold to a studio and released in theaters without any attribution to Lucas.

These outcomes would be absurd and are not countenanced by *Ashton-Tate* (which, again, merely holds that a joint author is not *automatically* deemed an author of derivative works). But they would certainly follow from Lizzo's interpretation of the case law.[2]

Put simply, there is no absolute rule that Counterclaimants cannot be co-authors of a modified version of their co-authored composition; and because they

---

[2] Section 101 of the Copyright Act, which Lizzo quotes, does not support her argument either. It provides that where a work "has been prepared in different versions, each version constitutes a separate work," but it does not address or answer the question of *who is deemed an author* of that separate work.

Kinsella Weitzman Iser Kump LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Tel 310.566.9800 • Fax 310.566.9850

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   have adequately pled the elements of co-authorship of "Truth Hurts," the motion

2   should be denied.

3   **C.** **The Court Should Decline To Test The Allegations Of Joint Authorship**

4   **Through A Comparison Of "Healthy" And "Truth Hurts"**

5       Lizzo asks the Court to alternatively dismiss the First Counterclaim on the

6   basis that Counterclaimants "cannot plausibly contend that 'Truth Hurts' is the

7   'Final Product' of ['Healthy']." (Mot., p. 15.) Lizzo asks the Court to analyze the

8   compositions in the recordings of "Healthy" and "Truth Hurts," reasoning that this is

9   permissible in the context of determining non-infringement on a motion to dismiss.

10   (*See id.*) The motion then proceeds to superficially analyze the works and argue that

11   they lack substantial similarity, such that Counterclaimants cannot be co-authors of

12   "Truth Hurts." (*See id.* at pp. 16-17.)

13       To start, co-authorship is not assessed through a "substantial similarity"

14   analysis; it is assessed through consideration of the *Aalmuhammed* factors. Yes, the

15   question of whether the alleged co-author contributed copyrightable expression to

16   the work is part of the analysis, but a contributor's co-authorship is not lost, as

17   Lizzo's analysis presupposes, if a court can find substantial material in a work that

18   was not supplied by that contributor, or that differs from what the contributor added

19   to the work. As discussed above, co-authors under copyright law are frequently

20   responsible for "separate and indispensable elements of the completed product."

21   *Reinsdorf*, 922 F. Supp. 2d at 872. Thus, the fact that some aspects of "Truth Hurts"

22   differ from "Healthy" is not dispositive.

23       Even if authorship turned on a traditional substantial similarity analysis as

24   conducted in infringement cases (which it does not), the Court should not conduct

25   that analysis now at the pleading stage, without the benefit of expert testimony. In

26   cases involving music compositions, the extrinsic test for substantial similarity is

27   typically guided by testimony from trained musicologists. Some courts have opined

28   that expert testimony is indispensable in cases involving music compositions. *See*,

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   *e.g.*, *Francescatti v. Germanotta*, 11-CV-5270, 2014 WL 2767231, at *9 (N.D. Ill.

2   Jun. 17, 2014) ("Several concerns arise in this case that lead us to conclude that

3   expert testimony is warranted. Given how increasingly complex the music industry

4   has become since the ordinary observer was first established, we share the concern

5   raised in the literature that a court's 'lay ear' may not be able to adequately assess

6   the similarities between musical works."); *Cottrill v. Spears*, 02-3646, 2003 WL

7   21223846, at n.5 (E.D. Pa. May 22, 2003) ("As this case involves music, an area

8   that benefits from, *rather that necessitates*, expert testimony, the two part analysis

9   applies instead of the single substantial similarity inquiry.") (emphasis added).

10      Here, an assessment of the extrinsic similarity of the recordings of "Healthy"

11  and "Truth Hurts" would require, among other things: a transposition of the

12  recordings into the same key; a comparison of the overall structure of the

13  compositions; a comparison of harmonic structures; a comparison of drum rhythms;

14  a comparison of instrumental melodies (with regard to both pitch and rhythm); a

15  comparison of vocal melodies (also with regard to both pitch and rhythm); and a

16  comparison of lyrics. The Court is not likely positioned at this time to conduct a

17  detailed musicological analysis of this sort.

18      Moreover, Counterclaimants should not be deprived of an opportunity to

19  submit their own expert testimony addressing the works in detail. The motion quotes

20  a musicological analysis prepared on Counterclaimants' behalf before the filing of

21  litigation, which was referenced in the Counterclaims. (*See* Mot., p. 16.) That

22  analysis, while fully supportive of Counterclaimants' claim, was only preliminary.

23  Counterclaimants are entitled to a fair opportunity to commission a more thorough

24  musicological analysis of the kind usually prepared in litigation.

25      At the appropriate time, Counterclaimants will prepare and submit expert

26  testimony demonstrating: (1) with respect to the First Counterclaim for co-

27  authorship, that they contributed innumerable copyrightable, musical elements to

28  "Truth Hurts" as needed to constitute co-authorship; and (2) with respect to the

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   Second Counterclaim, which pleads in the alternative that "Truth Hurts" is a

2   derivative work of "Healthy," that the compositions in the recordings are

3   substantially similar.[3] Until then, a musicological analysis of the compositions of

4   these recordings is premature.

5        This is all the more true given the great weight of authority that authorship

6   issues are too fact-intensive to be decided at the pleading stage. As district courts in

7   this Judicial District have held, the *Aalmuhammed* factors "are all fact-specific

8   inquiries that cannot be resolved on a motion to dismiss unless the underlying facts

9   are not disputed." *Creative Dream Prods., LLC v. Houston*, 2015 WL 12731915, at

10  *5; *see also*, *e.g.*, *Robertson*, 2019 WL 2141971, at *8 ("Whether Robertson's

11  contributions to the songs ultimately support his claim for joint authorship under the

12  *Aalmuhammed* test is an issue of fact, which cannot be decided on a motion to

13  dismiss."); *Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1066 (C.D.

14  Cal. 2001) ("Resolving these [joint authorship] issues would [require] that the court

15  decide disputed factual issues going to the merits of the dispute .... [which] cannot

16  be done in the context of a motion to dismiss ...."); *Del Rio v. Virgin Am., Inc.*, 18-

17  1063-GW (SKx), 2018 WL 5099720, at *8 (C.D. Cal. June 28, 2018) (holding that

18  "at this stage the Court would find it premature to determine whether Plaintiff and

19  Defendants are joint authors in the Recording" because "[t]his issue is better suited

20  for summary judgment or trial"); *Jacobsen v. Young*, 10-3246-JFW (JCx), 2010 WL

21  11549745, at *4 (C.D. Cal. Aug. 16, 2010) (denying motion to dismiss and holding

22  that authorship/ownership issues "are more appropriately resolved in a motion for

23  summary judgment"); *Grady v. Scholastic Inc.*, 12-07992-GAF (JCGx), 2013 WL

24  12132199, at *4-5 (C.D. Cal. Jan. 31, 2013) (denying motion to dismiss declaratory

25

26  ─────────────

27       [3] As contrasted with the determination of co-authorship, substantial similarity
    *is* the appropriate inquiry in determining whether a work is derivative of another.

28  *See Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984).

1  relief claim of joint authorship, finding that while the claim "could have been

2  pleaded more clearly, it is not 'indefensible as a matter of law.'").

3  **D.    The Second Counterclaim, Pled In The Alternative, Does Not Contradict**

4  **Or Support The Dismissal Of The First Counterclaim**

5        Lizzo argues that the First Counterclaim seeking a declaration of joint

6  authorship of "Truth Hurts" should be dismissed as a matter of law because it is

7  "irreconcilably inconsistent" with the Second Counterclaim, which alleges in the

8  alternative that "Truth Hurts" is a derivative work of "Healthy." The Court should

9  reject Lizzo's argument.

10       As a preliminary matter, for all the reasons discussed above, an allegation that

11 "Truth Hurts" is a derivative work of "Healthy" is not inconsistent with, and does

12 not preclude, an allegation that Counterclaimants are co-authors of "Truth Hurts."

13 Again, *Weissman* and *Ashton-Tate* stand only for the proposition that joint

14 ownership of one work does not "automatically" make such person a co-author of

15 derivative works; in other words, joint ownership is "insufficient" by itself to render

16 that person a co-author of all derivative works. (*See supra* p. 20.) But, of course, a

17 co-author of a first work *could be* a co-author of a second, derivative work,

18 assuming the *Aalmuhammed* factors are met.

19       Further, even assuming for the sake of argument the First Counterclaim and

20 Second Counterclaim plead inconsistent theories, it is axiomatic that "[a] party may

21 set out 2 or more statements of a claim or defense alternatively or hypothetically,

22 either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). Thus,

23 "[a]t the pleadings stage, a claimant is free to plead inconsistent theories of

24 liability." *AmeriPOD, LLC v. DavisREED Constr. Inc.*, 3:17-CV-00747-H-WVG,

25 2017 WL 2959351, at *2 (S.D. Cal. July 11, 2017). "These inconsistent theories may

26 [even] be premised on contradictory statements of fact so long as the pleader has a

27 legitimate doubt about the underlying facts." *Id.*; *see also Byton N. Am. Co. v.*

28 *Breitfeld*, 19-10563-DMG (JEMx), 2020 WL 3802700, at *9 (C.D. Cal. Apr. 28,

KINSELLA WEITZMAN ISER KUMP LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   2020) (noting that "the Ninth Circuit's general rule is that plaintiffs may plead

2   alternative claims, even if those claims are inconsistent").

3   This same rule of course applies in copyright-related disputes. In *Robertson v.*

4   *Burdon*, the plaintiff alleged that it contributed to the authorship of multiple songs

5   later registered and released by the defendant without attribution to the plaintiff.

6   2019 WL 2141971, at *1-2. The plaintiffs brought causes of action for copyright

7   infringement, declaratory relief with respect to joint authorship, and accounting. *Id*.

8   *1. The Court denied defendants' motion to dismiss, noting that under the rules of

9   copyright law, even though plaintiffs "cannot recover for both copyright

10   infringement and joint authorship theories of liability," they "may plead claims in

11   the alternative, even when their theories are inconsistent." *Id*. at *9 (citing Fed. R.

12   Civ. P. 8(d)(3); *see also Erwin v. Sestero*, 14-3890-RSWL (PJWx), 2014 WL

13   12591480, at *2 (C.D. Cal. Dec. 18, 2014) (denying motion to dismiss because

14   plaintiff was permitted to plead that they were both sole owner of copyright and,

15   alternatively, joint owner, even though claims nullified each other).

16   Accordingly, even to the extent the Second Counterclaim is theoretically

17   inconsistent with the First Counterclaim, this is of no import and does not justify

18   dismissal of the claim. Likewise, "there is nothing in the Federal Rules of Civil

19   Procedure to prevent a party from filing successive pleadings that make inconsistent

20   or even contradictory allegations." *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d

21   856, 860 (9th Cir. 2007). Thus, to the extent Lizzo argues that the First

22   Counterclaim as now pled is inconsistent with the original Counterclaims (which it

23   is not), that is no basis to dismiss the claim.

24   ## IV. CONCLUSION

25   For the reasons stated, Counterclaimants respectfully request that the Court

26   deny the Motion to Dismiss. Should the Court sustain the Motion, Counterclaimants

27   request leave to amend to cure any purported defects in the pleading.

28

**KINSELLA WEITZMAN ISER KUMP LLP**
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1    DATED:  October 16, 2020          KINSELLA WEITZMAN ISER KUMP LLP

2

3

4                                      By:      /s/ Lawrence Y. Iser
                                              Lawrence Y. Iser
5                                             Attorneys for Defendants and
                                              Counterclaimants Justin Raisen, Jeremiah
6                                             Raisen, Justin "Yves" Rothman, and Heavy
                                              Duty LLC
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Opposition to Motion to Dismiss First Amended Counterclaims